P. Nicholas Reid, Esq. (SBN 292471)
530 B Street, Suite 300
San Diego, CA 92101
Tel: (619) 734-7349

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| L1 TECHNOLOGIES, INC.; SYNCWISE, LLC and PIXELS MATTER, LLC<br><br>　　Plaintiffs,<br><br>　　v.<br><br>SERHII CHEKANOV; ROMAN KOLESNIKOV; VEBERFOC, INC., and DOES 1-20<br><br>　　Defendants. | Case No.: 20CV0259H JLB<br><br>**PLAINTIFF'S PRETRIAL BRIEF**<br><br>Complaint Filed: February 11, 2020<br>Pretrial Conference: August 14, 2023<br>Trial Date: August 15, 2023<br>Judge: Hon. Marilyn L. Huff |

## **TABLE OF CONTENTS**

| | |
|---|---|
| Table Of Authorities | Pg. 2 |
| Introduction | Pg. 2 |
| Factual Background | Pg. 3 |
| Argument | Pg. 4 |
| 　　Breach of Contract | Pg. 4 |
| 　　Breach of Covenant of Good Faith and Fair Dealing | Pg. 5 |
| 　　Fraud | Pg. 5 |
| 　　Negligent Misrepresentation – Dismissed | Pg. 6 |
| 　　Breach of Fiduciary Duty – Dismissed | Pg. 6 |
| 　　Conspiracy – Dismissal of Claim | Pg. 6 |
| 　　Conversion | Pg. 7 |
| 　　Unjust Enrichment – Dismissed | Pg. 7 |

    Misappropriation by Acquisition – Dismissal of Claim    Pg. 7
    Unfair and Deceptive Trade Practices    Pg. 7
    Unfair Competition    Pg. 8
    Intentional Interference with Contracts    Pg. 8
    Defamation per se    Pg. 9
    Trade Libel    Pg. 9

Conclusion    Pg. 10

## TABLE OF AUTHORITIES

City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith (1998) 68 Cal.App.4th 445, 482 [80 Cal.Rptr.2d 329] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Pg. 6

City of Costa Mesa v. D'Alessio Investments, LLC (2013) 214 Cal.App.4th 358, 376 [154 Cal.Rptr.3d 698] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Pg. 10

Comunale v. Traders & General Ins. Co. (1958) 50 Cal.2d 654, 658 [328 P.2d 198] . . . . . . . . Pg. 5

Moore v. Wells Fargo Bank, N.A. (2019) 39 Cal.App.5th 280, 291-292 [251 Cal.Rptr.3d 779] . Pg. 5

Pacific Gas & Electric Co., supra, 50 Cal.3d at p. 1129. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Pg. 9

Quelimane Co. v. Stewart Title Guaranty Co. (1998) 19 Cal.4th 26, 55 [77 Cal.Rptr.2d 709, 960 P.2d 513] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Pg. 8

Smith v. Maldonado (1999) 72 Cal.App.4th 637, 645 [85 Cal.Rptr.2d 397] . . . . . . . . . . . . . . . Pg. 9

Voris v. Lampert (2019) 7 Cal.5th 1141, 1158 [250 Cal.Rptr.3d 779, 446 P.3d 284] . . . . . . . . Pg. 7

## INTRODUCTION

Plaintiffs consist of, L1 TECHNOLOGIES, INC., a California Corporation dba iGolf ("iGolf"); SYNCWISE, LLC a Wyoming Limited Liability Company ("Syncwise"); and PIXELS MATTER, LLC, a Wyoming Limited Liability Company ("Pixels") (collectively "Plaintiffs") submit this Pretrial Brief pursuant to Local Rule 16.1(f)(9)(a).

The sole remaining Defendant in this action is SERHII CHEKANOV, an individual ("Chekanov") or ("Defendant"). Defendant has not raised any legal disputes to Plaintiffs' claims.

///
///
///

# FACTUAL BACKGROUND

Plaintiffs consist of, L1 TECHNOLOGIES, INC., a California Corporation dba iGolf ("iGolf"); SYNCWISE, LLC a Wyoming Limited Liability Company ("Syncwise"); and PIXELS MATTER, LLC, a Wyoming Limited Liability Company ("Pixels") (collectively "Plaintiffs").

The sole remaining Defendant in this action is SERHII CHEKANOV, an individual ("Chekanov") or ("Defendant").

Defendant previously worked as a software engineer for Pixels (FAC ¶¶ 19, 29) under a written contract titled 'Independent Contractor Agreement #58' on July 1, 2019 – produced as EXHIBIT 1 of the FAC – in relation to golf cart control projects utilizing confidential iGolf and Syncwise intellectual property (collectively "Confidential IP") located and accessed on Pixels computer servers (FAC ¶¶ 22). During this time Defendant stole the Confidential IP from the Pixels computer servers. At all times Pixels performed pursuant to the written contract terms (FAC ¶¶ 23).

Pixels and Chekanov entered into the Independent Contractor Agreement #58 ("Agreement 58") (FAC ¶¶ 22, 24, 27, 28) with the following relevant sections:

> **7. Confidentiality.** Each party [Pixels and Chekanov] understands and agrees that in furtherance of the transaction evidenced by this Agreement, Contractor [Chekanov] can have access to Company's [Pixels] confidential information. Contractor [Chekanov] shall not disclose [Pixels] confidential information.
>
> **8. Term.** (8.2) All mutual obligations occurred before expiration or termination term, shall survive the expiration or termination of this Agreement.
>
> **10. Ownership of Deliverables.** Company [Pixels] shall receive all rights for deliverables and components thereof. Company [Pixels] solely and exclusively holds and owns deliverable.
>
> (10.3) Company [Pixels] acquires all property rights for a deliverable regardless of, whether they were developed directly by Contractor [Chekanov] or by a third party on Contractor's [Chekanov] order.

**12. Miscellaneous.** If the Contractor [Chekanov] has a valid contract with The Company [Pixels], the above-mentioned items will be provided; however all hardware, software and office appliances remain property of the Company [Pixels].

After stealing the Confidential IP, Defendant Chekanov shared the Confidential IP with Roman Kolesnikov and Dmitry Fateev and then conspired with the two to create VeberFOC. Defendant Chekanov held the position of CEO and Chairman of VeberFOC with the email Chekanov@veberfoc.com and corresponding veberfoc.com website, which mimicked Plaintiff iGolf's website – produced as EXHIBIT 4 of the FAC. Defendant Chekanov used this position to create social media accounts, such as: Facebook, LinkedIn, Instagram, Twitter and YouTube. Defendant Chekanov used these social media platforms to directly contact at least 37 of Plaintiffs' customers and stated that Defendant Chekanov had Plaintiffs' Confidential IP in his possession and would make competing products with the stolen Confidential IP for a lower cost than Plaintiffs (FAC ¶¶ 23, 24, 25, 27, 28, 31).

Plaintiffs filed this action and then Defendant started his attack on Plaintiffs by making harmful false statements about Plaintiffs on social media platforms, such as including, but not limited to: Facebook, LinkedIn, Instagram, Twitter and YouTube, in a manner that virtually guaranteed Plaintiffs' customers would see the statements– produced as EXHIBIT 6 of the FAC. Then Defendant made false statements on consumer review websites, such as Yelp, to harm Plaintiffs and false statements on employment review websites, such as Glassdoor, to make Plaintiffs less desirable to current and future employees and further harm Plaintiffs' business.

Defendant Chekanov then made false reports to Interpol and the IRS – produced as EXHIBIT 7 of the FAC and produced by Defendant as Document 10, Pg. 40 – Pg.ID 158 – about Plaintiffs for the sole purpose of harming and harassing Plaintiffs and then submitted those documents to this Court – produced by Defendant as Document 10, Pg. 40 – Pg.ID 158.

## ARGUMENT

### BREACH OF CONTRACT

Plaintiff Pixels fulfilled all of its obligations under the Agreement #58 while Defendant Chekanov breached it by: first, stealing Confidential IP from Pixels' computer servers in violation

of Sections 10 and 12, which collectively state that ownership of all deliverables belong to Pixels and shall remain property of Pixels; secondly, Chekanov breached the confidentiality clause, section 7, by disclosing Confidential IP to Dmitry Fateev, Roman Koleniskov and third parties through direct communication via public and private advertising of the Confidential IP, including pictures of prototype units belonging to iGolf, and by making defamatory posts which include posting certain Confidential IP to the general public.

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

Plaintiff Pixels and Defendant Chekanov entered into the Agreement #58 and Pixels fulfilled all of its obligations. Chekanov unfairly and intentionally interfered with Pixels's right to receive the benefits of Agreement #58 by intentionally not performing by: not producing work product, causing physical altercations in the office, theft of Confidential IP and breach of confidentiality. Pixels was harmed by Chekanov's conduct.

"There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." (Comunale v. Traders & General Ins. Co. (1958) 50 Cal.2d 654, 658 [328 P.2d 198]). Defendant Chekanov virtually did the exact opposite of each term of Agreement #58 and such actions were for Chekanov's interest and not for Pixels to receive the benefits of Agreement #58.

"The issue of whether the implied covenant of good faith and fair dealing has been breached is ordinarily "a question of fact unless only one inference [can] be drawn from the evidence." (Moore v. Wells Fargo Bank, N.A. (2019) 39 Cal.App.5th 280,291-292 [251 Cal.Rptr.3d 779]). It is undoubtedly apparent that Chekanov breached the covenant of good faith with Pixels from his actions of: non-production of work product; theft of Confidential IP; publication of Confidential IP; Interfering with Pixels's Contractual Relationships; Fraud; Defamation and Trade Libel.

## FRAUD AND CONCEALMENT

Defendant Chekanov, under false pretenses, provided information to Plaintiff Pixels in order to induce Pixels to enter ingo Agreement #58. Pixels reasonably relied on Chekanov's representations that he was qualified to perform the specific duties of a software engineer in this field and would perform pursuant to the terms. Ultimately, Pixels entered into Agreement #58.

5

**PLAINTIFF'S PRETRIAL BRIEF**

Chekanov intended Pixels to believe his false representations, that he would perform pursuant to the terms of Agreement #58, to be truth. Chekanov intended to interfere with and erode the business of Pixels by not performing the work pursuant to Agreement #58 and causing havoc by refusing to work, yelling at team members of Pixels and even engaging in physical altercations within the Pixels office (FAC ¶¶ 20, 21) for the purpose of stopping Pixels from performing the necessary work within timelines for iGolf and Syncwise to operate. Chekanov used this position to access and steal the Confidential IP, then use and sell it for his own financial gain and to harm Pixels.

In fact, at the time Chekanov made the representations in Agreement #58, on information and belief, he knew were false and had no intention of performing under the Agreement. Chekanov merely wanted Pixels to hire him for his own financial gain, not for the mutual benefit of both him and Pixels as contracted, in violation of 18 U.S.C. § 1341 and 1343.

"Fraud is an intentional tort; it is the element of fraudulent intent, or intent to deceive, that distinguishes it from actionable negligent misrepresentation and from nonactionable innocent misrepresentation. It is the element of intent which makes fraud actionable, irrespective of any contractual or fiduciary duty one party might owe to the other." (City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith (1998) 68 Cal.App.4th 445, 482 [80 Cal.Rptr.2d 329]). Chekanov made representations with the intent to deceive Pixels because he did not have the intention to perform pursuant to Agreement #58.

## NEGLIGENT MISREPRESENTATION

This cause of action has been dismissed from this Action.

## BREACH OF FIDUCIARY DUTY

This cause of action has been dismissed from this Action.

## CONSPIRACY

Plaintiffs do not intend to argue this cause of action as a result of defendants Dmitry Fateev, Roman Kolesnikov and VeberFOC, Inc. being dismissed from this Action. Plaintiffs dismiss this claim of Conspiracy.

**PLAINTIFF'S PRETRIAL BRIEF**

## CONVERSION

The Confidential IP is the rightful property of Plaintiff iGolf and Syncwise which Pixels has contractual authorization to access and store the Confidential IP. Sometime between July and October of 2019, Chekanov stole a copy of the Confidential IP using fraudulent and illegal means in order to defraud Plaintiffs, in violation of state and federal laws. Once Chekanov seized control of Confidential IP, he began to sell it publicly. As of the trial date, Chekanov continues to exercise complete control and dominion over the stolen Confidential IP for his own use, enjoyment and financial gain at the expense of Plaintiffs' harm.

"[C]onversion is a strict liability tort. It does not require bad faith, knowledge, or even negligence; it requires only that the defendant have intentionally done the act depriving the plaintiff of his or her rightful possession." (Voris v. Lampert (2019) 7 Cal.5th 1141, 1158 [250 Cal.Rptr.3d 779, 446 P.3d 284]). Chekanov intended to deprive Pixels, iGolf and Syncwise of their lawful possession of the Confidential IP when Chekanov stole the Confidential IP.

## MISAPPROPRIATION BY ACQUISITION

Plaintiffs do not intend to argue this cause of action as a result of defendants Dmitry Fateev, Roman Kolesnikov and VeberFOC, Inc. being dismissed from this Action. Plaintiffs dismiss this claim of Unfair Competition.

## UNJUST ENRICHMENT

This cause of action has been dismissed from this Action.

## UNFAIR AND DECEPTIVE TRADE PRACTICES – §17200

Plaintiffs iGolf and Syncwise claim Defendant Chekanov engaged in unlawful sales below cost by offering to sell iGolf and Syncwise products and services at a price which was below the price which iGolf and Syncwise and offered it directly to Plaintiffs' clients; Chekanov made multiple defamatory posts to Plaintiffs' customers and consumers; and Chekanov reported false claims about Plaintiffs to Interpol and the IRS – produced as EXHIBIT 7 of the FAC and produced by Defendant as Document 10, Pg. 40 – Pg.ID 158. The purpose of Chekanov's actions is to injure his competitors or destroy competition – the Plaintiffs.

"Proof that a defendant sold or distributed articles or products below cost will be 'presumptive evidence of the purpose or intent to injure competitors or destroy competition.' " (Pan Asia Venture Capital Corp., supra, 74 Cal.App.4th at p. 432, internal citation omitted).

## UNFAIR COMPETITION

Plaintiffs do not intend to argue this cause of action as a result of defendants Dmitry Fateev, Roman Kolesnikov and VeberFOC, Inc. being dismissed from this Action. Plaintiffs dismiss this claim of Unfair Competition.

## INTENTIONAL INTERFERENCE WITH CONTRACTS

Defendant Chekanov knew Plaintiffs had contracts with the largest companies in the golf industry and intentionally interfered with these contractual relationships by contacting at least 37 of Plaintiffs' customers and stating that Defendant could make the exact same products as Plaintiffs for a lower price because Defendant Chekanov had Plaintiffs' Confidential IP – produced as EXHIBIT 2 & 3 of the FAC. Defendant made defamatory postings about Plaintiffs on multiple social media platforms, in public posts and in private messages, directed at Plaintiffs' customers for the purpose of harming the contractual agreements between Plaintiffs and their customers. Defendant intended to cause the termination of these contracts between Plaintiffs and their customers and in fact attempted to do so multiple times. This harmed Plaintiffs' relationships with their contractual customers and Plaintiffs have had to take remedial measures to prevent customers from terminating their contracts because customers had concerns of: the cost of Plaintiffs' products and services; Plaintiffs' security protocol; and the operations of Plaintiffs' businesses.

"Because interference with an existing contract receives greater solicitude than does interference with prospective economic advantage, it is not necessary that the defendant's conduct be wrongful apart from the interference with the contract itself." (Quelimane Co. v. Stewart Title Guaranty Co. (1998) 19 Cal.4th 26, 55 [77 Cal.Rptr.2d 709, 960 P.2d 513]). Defendant's interference with multiple of Plaintiffs' contracts by directly contacting customers which Defendant knew were contractually bound parties with Plaintiffs, and intended to sever those contractual relationships so the customers would purchase from Defendant instad.

"Plaintiff need not allege an actual or inevitable breach of contract in order to state a claim for disruption of contractual relations. We have recognized that interference with the plaintiff's performance may give rise to a claim for interference with contractual relations if plaintiff's performance is made more costly or more burdensome. Other cases have pointed out that while the tort of inducing breach of contract requires proof of a breach, the cause of action for interference with contractual relations is distinct and requires only proof of interference." (Pacific Gas & Electric Co., supra, 50 Cal.3d at p. 1129). Defendant contacted parties that he knew were contractually related parties to Plaintiffs through social media postings and messaging which has left a trail showcasing Defendant's interferences, both publicly and privately.

## DEFAMATION PER SE

Defendant harmed Plaintiffs by making false statements in defamatory postings on social media platforms – both through public posts and through private messages – made false claims to Interpol and the IRS about Plaintiffs. Defendant made the statements to multiple third parties, other than Plaintiffs; the third parties reasonably understood the statements were about Plaintiffs; the third parties reasonably understood the statements to mean that Plaintiffs' engage in theft and copying intellectual property of others, claims of multiple lawsuits by women against the employees of the Plaintiffs; illegal activity to an international police agency; tax violations to the IRS; and Defendants failed to use reasonable care to determine the truth or falsity of the statements. As a result of Defendant's false statements, Plaintiffs' business has been harmed both in its reputation and financially.

"Defamation is an invasion of the interest in reputation. The tort involves the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage." (Smith v. Maldonado (1999) 72 Cal.App.4th 637, 645 [85 Cal.Rptr.2d 397]). The purpose of all of Defendant's publication of false statements of fact were to make such third parties believe the statements to be true and to cause injury to Plaintiffs' reputation.

## TRADE LIBEL

Defendant harmed Plaintiffs by making untruthful statements which disparaged Plaintiffs hardware products, software products and services. Defendant made statements that [would be

clearly or necessarily understood to have] disparaged the quality of Plaintiffs' products and services; the statements were made to persons other than Plaintiffs; the statements were untrue; Defendant knew the statements were untrue, or acted with reckless disregard of the truth; Defendant knew, or should have recognized, someone might act in reliance on the statement, causing Plaintiffs financial loss; Plaintiffs actually suffered direct financial harm because third parties acted in reliance on the statements; and Defendant's conduct was a substantial factor in Plaintiffs' harm.

"Trade libel is the publication of matter disparaging the quality of another's property, which the publisher should recognize is likely to cause pecuniary loss to the owner. [Citation.] The tort encompasses 'all false statements concerning the quality of services or product of a business which are intended to cause that business financial harm and in fact do so.' [Citation.] [¶] To constitute trade libel, a statement must be false." (City of Costa Mesa v. D'Alessio Investments, LLC (2013) 214 Cal.App.4th 358, 376 [154 Cal.Rptr.3d 698]). Defendant posted voluminous amounts of false statements concerning the quality of Plaintiffs' software products, hardware products, services and business, in general, publicly on Plaintiffs' customer social media pages including statements such as: "L1 Technologies, Pixels and iGolf are scammers." and "Developers are engaged in theft and copying of branded electrical and GPS devices while present the development as their own". The purpose of Defendant's false statements was to cause financial harm to Plaintiffs and ultimately did so. Defendant then tagged Plaintiffs' customers in the posts so they would be notified of the false statements and ensure Defendant's message would be seen by the customers. Further, Defendant made a report to the IRS with false statements of Plaintiffs' products and services – produced as EXHIBIT 7 of the FAC and produced by Defendant as Document 10, Pg. 40 – Pg.ID 158.

## CONCLUSION

For the reasons set forth above each and every one of Plaintiffs' causes of action should be found in favor of Plaintiffs in order to secure complete presentation of the evidence and a fair resolution to the lawsuit.

Dated: August 7, 2023



P. Nicholas Reid, attorney for Plaintiffs