UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| L1 TECHNOLOGIES, INC.; SYNCWISE, LLC; and PIXELS MATTER, LLC,<br><br>                                Plaintiffs,<br><br>v.<br><br>SERHII CHEKANOV,<br><br>                                Defendant. | Case No.: 3:20-cv-00259-H-JLB<br><br>**ORDER DENYING DEFENDANT'S MOTION TO REOPEN CASE AND MOTION TO DISMISS**<br><br>[Doc. Nos. 91, 93.] |

On August 30, 2023, following a one-day bench trial, the Court issued a memorandum decision in favor of Plaintiffs L1 Technologies, Inc., Syncwise, LLC, and Pixels Matter, LLC ("Plaintiffs") and against Serhii Chekanov ("Defendant"). (Doc. Nos. 87, 89.) That same day, the Court issued a judgment awarding Plaintiff Pixels Matter, LLC ("Pixels Matter") $55,000 in damages plus costs as provided by law for its breach of contract cause of action and ordered Plaintiffs to file proposed injunctive relief. (Doc. No. 90.)

On September 4, 2023, Defendant filed a "motion to reopen case" and attached six (6) documents. (Doc. No. 91.) On September 8, 2023, the Court construed Defendant's filing as a motion for reconsideration under Federal Rule of Civil Procedure 60(b) and set

1

a briefing schedule. (Doc. No. 92.) On September 10, 2023, Defendant filed a nearly identical motion to dismiss the complaint with seven (7) documents attached. (Compare Doc. No. 91, with Doc. No. 93.) On September 11, 2023, the Court construed Defendant's motions as a single motion for relief under Federal Rule of Civil Procedure 60(b), re-set briefing deadlines, and scheduled a hearing for October 2, 2023. (Doc. No. 95.) On September 13, 2023, the Court provided an internet-accessible teams videoconference link and dial-in number for the October 2 hearing. (Doc. No. 96.) On September 22, 2023, Plaintiffs filed an opposition to Defendant's motions. (Doc. No. 97.) On September 24, 2023, Defendant filed an affidavit in support of his motions. (Doc. No. 98.) The Court, on September 25, 2023, directed Plaintiffs to respond to Defendant's September 24 filing. (Doc. No. 99.) On September 26, 2023, Plaintiffs filed their response in opposition. (Doc. No. 100.) On October 2, 2023, the Court held a telephonic hearing on Defendant's motions. (Doc. No. 101.) Patrick Nicholas Reid appeared in person for Plaintiffs. (Id.) Defendant did not attend. (Id.)

By the instant motions, Defendant seeks to reopen the case for the Court to consider his arguments and review the documents attached to his motions or, in the alternative, Defendant asks the Court to dismiss the complaint in its entirety. (Doc. Nos. 91, 93.)

## BACKGROUND

The procedural history and facts of this case are well known to the Court. On February 11, 2020, Plaintiffs filed a complaint against Defendant[1] Serhii Chekanov. (Doc. No. 1.) On September 15, 2020, Plaintiffs filed a motion for leave to amend the complaint. (Doc. No. 18.) The Court granted Plaintiffs' motion and on October 17, 2020, Plaintiffs filed a first amended complaint ("FAC"). (Doc. Nos. 23, 24.) In the FAC, Plaintiffs' state that Defendant resided in Miami, Florida. (Doc. No. 24, FAC ¶ 24.) Plaintiff Pixels Matter entered into an independent contractor agreement with Defendant on July 1, 2019. (Id. ¶

---

[1] Additional Defendants Dmitry Fateev, Roman Kolesnikov, and VebrFOC, Inc. were dismissed from this litigation. (Doc. Nos. 16, 49, 68.)

18.) Pixels Matter hired Defendant as a software engineer and he was tasked with projects that focused on golf cart control that utilized Plaintiffs L1 Technologies, Inc. and Syncwise, LLC's confidential intellectual property. (Id. ¶ 19.) Plaintiffs allege that Defendant provided false information regarding his abilities as a software engineer as he was unable to perform the work he was hired to perform. (Id. ¶ 21.) Defendant was terminated in October 2019. (Id.) While Defendant was working for Pixels Matter, Plaintiffs allege he accessed Plaintiffs' confidential intellectual property on Pixels Matter computer servers, removed the confidential intellectual property from the servers, and absconded with it. (Id. ¶¶ 21, 22.) Shortly after Defendant left Plaintiffs, they allege that he utilized Plaintiff's intellectual property to create his own company, VeberFOC, Inc., that offers competing products at lower prices to Plaintiffs' customers. (Id ¶¶ 22, 23, 29.) Based on these alleged actions, Plaintiffs sued Defendant for breach of contract, among other causes of action. (Doc. No. 24.)

On January 5, 2021, Defendant filed an answer to the FAC. (Doc. No. 32.) Following Defendant's answer, Magistrate Judge Burkhardt scheduled an Early Neutral Evaluation ("ENE") conference for March 24, 2021. (Doc. No. 33.) Defendant failed to file his ENE statement by the required date and failed to appear for the ENE conference. (Doc. Nos. 37, 39.) Judge Burkhardt issued an order setting a telephonic show cause hearing for April 7, 2021, regarding Defendant's failure to appear. (Doc. No. 41.) Defendant failed to appear at the telephonic show cause hearing. (Doc. No. 42.) Judge Burkhardt imposed a sanction of $75 for Defendant's failure to appear. (Doc. No. 43.)

On November 3, 2021, Judge Burkhardt issued an order providing zoom information for the parties to appear remotely for the November 10, 2021, mandatory settlement conference ("MSC"). (Doc. No. 46.) Defendant failed to lodge his MSC statement and failed to appear at the November 10 MSC that was held by video. (Doc. Nos. 45, 47.) Judge Burkhardt issued an order setting a telephonic show cause hearing for December 16, 2021, regarding Defendant's failure to appear. (Doc. No. 48.) Judge Burkhardt's order advised Defendant that if he could not afford to call into the Court's toll-free conference

line, he may request in his declaration that the Court convert the telephonic hearing to a video conference. (Id.) Defendant did not file the requisite declaration and failed to appear at the telephonic show cause hearing. (Doc. Nos. 50, 52.) Judge Burkhardt set an additional show cause hearing by video conference for February 25, 2022 and provided Defendant with a zoom link. (Doc. No. 52.) Defendant failed to appear. (Doc. No. 61.)

On February 7, 2022, Plaintiffs filed their initial pretrial memorandum prior to the February 14, 2022, pretrial conference.[2] (Doc. No. 53.) On February 23, 2022, Defendant filed a response that the Court construed as his pretrial memorandum. (Doc. No. 57.) In his response, Defendant stated that he was residing in the Ukraine. (Id.) Defendant filed an additional response on September 8, 2022. (Doc. No. 71.)

On February 14, 2022, the Court held a final pretrial conference. (Doc. No. 55.) The Court provided Defendant with nearly a year of notice of the date and time of the final pretrial conference because it was set on March 26, 2021, in the Court's scheduling order. (Doc. No. 40.) The Court also provided Defendant with a zoom link so that he could appear by video at the final pretrial conference. (Doc. No. 54.) Defendant failed to appear. (Doc. No. 55.) Defendant did not provide the Court with any reason for his absence. (Doc. No. 56.)

The Court issued an order to show cause for Defendant's failure to appear and scheduled a show cause hearing and rescheduled the final pretrial conference for February 28, 2022. (Doc. No. 56.) The Court provided Defendant with a zoom link so that he could appear by video at the show cause hearing and final pretrial conference. (Doc. No. 60.) Defendant failed to appear at the February 28 hearing. (Doc. No. 63.)

The Court repeatedly continued the order to show cause and final pretrial conference hearing. (Doc. Nos. 65, 67, 70, 72, 73, 74, 75.) Like his behavior before Judge Burkhardt, Defendant has routinely failed to comply with this Court's orders. (Doc. Nos. 55, 56, 63,

---

[2]   In accordance with Court orders, Plaintiffs have filed three amended pretrial memorandums. (Doc. Nos. 62, 64, 69.)

77.) Specifically, Defendant has failed to appear for Court-ordered conferences and hearings on orders to show cause on numerous occasions. (Doc. Nos. 39, 42, 47, 50, 56, 63, 77, 78, 81.) The Court has also consistently provided internet-accessible zoom or teams videoconference links and dial-in numbers free of charge to the parties. (Doc. Nos. 46, 54, 59, 60, 76, 78, 81, 82, 96.)

On June 12, 2023, following the multiple continuances on the order to show cause and final pretrial conference hearing, the Court held a status conference and provided a video link so that Defendant could appear remotely. (Doc. No. 77.) At the conference, Plaintiffs indicated that they wished to proceed to trial and requested a one-day bench trial. (Id.) Defendant failed to appear. (Id.)

On June 22, 2023 the Court issued an order to show cause why Defendant should not be held in default and issued a scheduling order setting a trial date. (Doc. No. 78.) In the order, the Court gave the parties two (2) months' notice and scheduled the order to show cause hearing and final pre-trial conference for August 14, 2023 and a one-day bench trial for August 15, 2023. (Id.) The Court provided an internet-accessible teams videoconference link and dial-in number for the order to show cause hearing and final pre-trial conference as part of the order. (Id.)

On August 14, 2023, the Court held the final pre-trial conference hearing. (Doc. No. 84.) Patrick Nicholas Reid appeared for Plaintiffs over the provided dial-in and videoconferencing link. (Id.) Defendant failed to appear. (Id.) The Court issued an order to show cause why Defendant should not be sanctioned, including terminating sanctions, for his failure to appear at the final pre-trial conference, failure to appear at the order to show cause hearing, failures to appear at numerous other Cout ordered hearings, and failures to comply with Court orders. (Doc. No. 85.)

On August 15, 2023, the Court held a one-day bench trial. (Doc. No. 87.) Patrick Nicholas Reid appeared for Plaintiffs. (Id.) Defendant failed to appear. (Id.) Plaintiffs called Melanie Gregory, Chief Technical Officer, and President of Pixels Matter, as their

witness and the Court received into evidence Plaintiffs' exhibits attached to the pretrial order. (Id.)

Following the bench trial, on August 30, 2023, the Court issued a memorandum decision, ruling in favor of Plaintiff Pixels Matter's breach of contract cause of action and awarded Pixels Matter damages. (Doc. No. 89.) The Court also ruled in favor of Plaintiffs L1 Technologies, Syncwise, and Pixels Matter on their intentional interference with contractual relations, conversion, and defamation per se causes of action and awarded Plaintiffs equitable relief in lieu of damages. (Id.) Based on the reasons stated in the memorandum decision, on August 30, 2023, the Court also issued a judgment awarding Pixels Matter $55,000 in damages plus costs as provided by law for its breach of contract cause of action. (Doc. No. 90.) In the judgment, the Court also stated that it will issue a permanent injunction for Plaintiffs on their remaining causes of action and awarded costs as provided by law. (Id.)

On September 4, 2023, Defendant filed a motion to reopen the case and attached six (6) documents to his motion. (Doc. No. 91.) On September 10, 2023, Defendant filed a nearly identical motion, requesting dismissal of the complaint with seven (7) documents in support of his arguments attached. (Compare Doc. No. 91, with Doc. No. 93.) On September 11, 2023, the Court construed both motions as a single motion for relief under Federal Rule of Civil Procedure 60(b) and scheduled a hearing for October 2, 2023. (Doc. No. 95.) On September 13, 2023, the Court provided an internet-accessible teams videoconference link and dial-in number for the October 2 hearing to the parties. (Doc. No. 96.) On September 22, 2023, Plaintiffs filed an opposition to Defendant's motions. (Doc. No. 97.) On September 24, 2023, Defendant filed an affidavit in support of his motions. (Doc. No 98.) In his September 24 filing, Defendant indicated that he could not attend the October 2 hearing due to his military service and requested that the Court review the documents attached to his motions. (Id.) On September 26, 2023, Plaintiffs filed their response in opposition to Defendant's September 24 filing. (Doc. No. 100.) On October

2, 2023, the Court held a hearing on Defendant's motions. (Doc. No. 101.) Patrick Nicholas Reid appeared in person for Plaintiffs. Defendant did not attend the hearing. (Id.)

Now, in addition to construing Defendant's motions under Federal Rule of Civil Procedure 60(b), the Court also considers Defendant's motions under Federal Rules of Civil Procedure 59(a)(2) and 59(e). In its discretion, the Court re-opens this case for the limited purpose of accepting and considering Defendant's arguments and the documents attached to his motions. However, for the reasons that follow, the Court denies Defendant's motions and declines to alter, amend, or vacate its August 30, 2023 judgment finding in favor of Plaintiffs and against Defendant.

## DISCUSSION

### I. Legal Standard

The Court construes Defendant's motion to reopen the case, (Doc. No. 91), and motion to dismiss the complaint, (Doc. No. 93), as a motion for reconsideration under Federal Rule of Civil Procedure 60(b), or in the alternative, a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). The Court also considers Defendant's motions under Federal Rule of Civil Procedure 59(a)(2).

Rule 60(b) provides: "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding" for certain enumerated reasons including: mistake, newly discovered evidence, fraud, a void judgment, a satisfied judgment, and any other reason that justifies relief. Fed. R. Civ. P. 60(b)(1)-(6). "[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." 389 Orange St. Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999). Notably, "[a] motion for reconsideration may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 880–81 (9th Cir. 2009) (citation omitted); see also U.S. v. Westlands Water Dist., 134 F.Supp.2d 111, 1131 (E.D. Cal. 2001) ("A motion for

reconsideration is not a vehicle to reargue the motion or to present evidence which should have been raised before.").

Rule 59(e) provides: "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment." Fed. R. Civ. P. 59(e).  Because "specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion in granting or denying the motion." McDowell v. Calderon, 197 F.3d 1253, 1255 n. 1 (9th Cir. 1999) (en banc) (per curiam) (internal quotation marks omitted).  But amending a judgment after its entry remains "an extraordinary remedy which should be used sparingly." Id.  In general, four grounds justify relief under Rule 59(e): (1) to correct manifest errors of law or fact upon which the judgment rests; (2) to present newly discovered or previously unavailable evidence; (3) to prevent manifest injustice; or (4) to correct for an intervening change in controlling law. Allstate Ins. Co. v. Herron, 634 F.3d 1101, 1111 (9th Cir. 2011).  Rule 59(e) "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." Exxon Shipping Co. v. Baker, 554 U.S. 471, 486 n. 5 (2008) (citation omitted). See e.g., Kona Enterprises, Inc. v. Est. of Bishop, 229 F.3d 877, 890–91 (9th Cir. 2000) (finding district court properly denied Rule 59(e) relief when plaintiffs had numerous opportunities to present the arguments and evidence that plaintiffs raised for the first time in their post-trial motion).

Rule 59(a)(2) states: "[a]fter a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of facts and conclusions of law or make new ones, and direct the entry of a new judgment." Fed. R. Civ. P. 59(a)(2).  There are three grounds for granting a new trial in court-tried actions under Rule 59(a)(2): (1) manifest error of law; (2) manifest error of fact; and (3) newly discovered evidence. Brown v. Wright, 588 F.2d 708, 710 (9th Cir. 1978). A "defendant's desire to introduce additional evidence after losing the case [does] not constitute a proper ground for granting a new trial" under Rule 59(a)(2). Id.  Chapman v. Pismo Food Store, No. 215CV02373SVWAGR, 2016 WL 11520381 at *2 (C.D. Cal. Sept.

1, 2016) (finding no grounds justifying Rule 59(a)(2) relief when plaintiff had an opportunity to present the evidence raised in its motion at trial).

## II.   Analysis

Defendant asks the Court to reopen the case or, in the alternative, dismiss the complaint. (Doc. Nos. 91, 93.) He submits thirteen (13) documents in support of the motions.[3] (Id.) Defendant requests that the Court "review all the documents without [his] participation." (Doc. No. 98 ¶ 6.) Specifically, Defendant asserts that he completed work for Pixels Matter and asks the Court to take note of various payments, a Ukrainian lawsuit, and a letter from a Ukrainian tax official. (Doc. Nos. 91, 93.) Defendant also makes several arguments pertaining to his work with Pixels Matter and alleges Plaintiffs engaged in numerous wrongdoings. (Id.)

Defendant states that he was unable to submit any evidence prior to trial or attend the one-day bench trial in August 2023 because he was on a combat mission in the Ukraine. (Id.) Defendant's military service in the Ukrainian conflict causes the Court significant pause. However, the Court's March 26, 2021, scheduling order, in accordance with Federal Rule of Civil Procedure 26(a)(3), set the deadline for Defendant to disclose any documents or other exhibits as January 14, 2022, before the conflict in Ukraine broke out. (Doc. No. 40.) All but one of the exhibits attached to Defendant's present motions predate the Court's January 14, 2022 deadline.[4] (Doc. No. 91, Exs. 1–5; Doc. No. 93, Exs. 1–5, 7.)

Considering Defendant's military obligations, the Court continued the order to show cause and final pretrial conference hearings numerous times, (Doc. Nos. 65, 67, 70, 72, 73, 74, 75), and routinely provided teams videoconference links and dial-in numbers free of

---

[3] Like his motions, many of Defendant's exhibits are duplicates. (Compare Doc. No. 91, Exs. 1–6, with Doc. No. 93, Exs. 1–7.)

[4] One document—an order in a Ukrainian lawsuit, (Doc. No. 91, Ex. 6; Doc. No. 93, Ex. 6)—postdates January 14, 2022. The Ukrainian court issued its order on November 1, 2022. However, this was still eleven (11) months before Defendant's final deadline to submit trial exhibits. (Doc. No. 78.)

charge to Defendant to facilitate his participation. (Doc. Nos. 46, 54, 59, 60, 76, 78, 81, 82, 96.) The Court gave Defendant two (2) months' notice of the final pre-trial conference and one-day bench trial. (Doc. No. 78.) Defendant did not appear. (Doc. No. 87.) Defendant's failure to appear in defiance of Judge Burkhardt's and this Court's orders throughout this lawsuit is well documented. (Doc. Nos. 39, 42, 47, 50, 56, 63, 77, 78, 81, 101.).

In his motions, Defendant asserts that his military service prevented him from attending the Court's October 2, 2023 hearing because going on the Internet "can open our positions to the enemy." (Doc. No. 98 ¶ 6.) However, there is ample evidence that Defendant received communications from this Court via the Internet during his military service. For example, Defendant filed the present motions through electronic means within ten (10) days of the Court's entry of judgment in favor of Plaintiffs and against Defendant. (Doc. Nos. 90, 91, 93.) Defendant has used the Internet repeatedly to submit documents electronically in this case. (Doc. Nos. 32, 57, 71, 91, 92, 98.) The Court is skeptical of Defendant's excuse that his miliary service interfered with his ability to attend the October 2, 2023 hearing. The hearing was specifically scheduled at a reasonable time in the Ukraine (7:00 pm) to facilitate Defendant's participation in the hearing on his own motions. (Doc. No. 96.)

Despite Defendant's repeated failure to engage in this lawsuit and timely submit his arguments and exhibits, the Court, in its discretion, considers his arguments and accepts his exhibits for the limited purpose of including them in the record. The Court is cognizant that due to Defendant's failure to appear at the August 15, 2023 bench trial and the October 2, 2023 hearing on the present motions, Plaintiffs lost the ability to cross-examine Defendant. At the October 2, 2023 hearing, Plaintiffs' counsel did not object to the Court entering Defendant's exhibits into the record for this limited purpose. The Court examines each of Defendant's arguments and exhibits in turn.

///

///

### A. The Ukrainian Lawsuit

Defendant "ask[s] the Court to refuse [this] Lawsuit . . . based [on a] Ukrainian court decision" entered on November 1, 2022. (Doc. No. 91 ¶ 12; Doc. No. 93 ¶ 12.) Defendant attached a copy of the court's decision in Russian.[5] (Doc. No. 91, Ex. 6; Doc. No. 93, Ex. 6). On November 2, 2020, Plaintiff Pixels Matter filed a lawsuit against Defendant in the Dzerzhynskyi District Court in Kharkiv, Ukraine. (Doc. No. 97, Ex. 1 at 11, 12.) Pixels Matter alleged various intellectual property right violations against Defendant. (Id.) Defendant participated in the Ukrainian lawsuit; he filed documents and appeared at a November 2022 court hearing in the Ukraine. (Id. at 12.) Pixels Matter did not pursue the Ukrainian lawsuit. (Id.) It did not appear at the November 2022 court hearing and did not "provide proper and admissible evidence" to support its claims. (Id.)

On November 1, 2022, Judge L.M. Rybalchenko dismissed Pixels Matter's claims because "plaintiff did not add evidence to the case file to confirm the existence of copyright and intellectual property rights." (Id. at 14.) For this reason, Judge Rybalchenko's decision was not a decision on the merits, but rather based on Pixels Matter's failure to prosecute its claims.[6] Even if the Ukrainian court decision had considered the merits of Pixels Matter's claims, it would not be binding on this Court. According to the parties' contract, California law governs the contractual relationship, not Ukrainian law. (Doc. No. 80, Ex. 1 ¶ 11) ("This Agreement shall be construed and governed in accordance with the laws of the State of California."). Given this provision, it is reasonable that Pixels Matter chose to abandon the Ukrainian case and prosecuted its claims in California under California law.

---

[5] At the Court's request, (Doc. No. 95), Plaintiffs provided a certified translation of the Ukrainian court's decision in English. (Doc. No. 97, Ex. 1.) Plaintiffs also submitted a non-certified translated copy of the Ukrainian court decision. (Id., Ex. 3.) Pursuant to Cal. R. of Ct., Rule 3.1110(g), the Court only considers the certified translated copy.

[6] Plaintiffs explain that they have attempted to contact the Pixels Matter's Ukrainian attorney who was responsible for the lawsuit but have not received a response. (Doc. No. 97 ¶ 25.)

Under Federal Rules of Civil Procedure 60(b), 59(e), and 59(a)(2), the Ukrainian court decision is not "newly discovered evidence." Judge Rybalchenko entered the court's order over eight (8) months before this Court issued its final scheduling order setting the trial date and over eleven (11) months before Defendant's final deadline to submit trial exhibits. (Doc. No. 78.) Given that the Ukrainian court's decision issued well before the final deadlines for Defendant to submit evidence in this case, it is not "newly discovered evidence." The Court declines to alter, amend, or vacate the judgment because of the Ukrainian court decision.

**B. Validity of the Parties' Contract**

Defendant contends that the parties' July 1, 2019 contract "was an absolutely pure fake," (Doc. No. 98 ¶ 2), and "that the plaintiff deliberately forged the contract." (Doc. No. 91 ¶ 14; Doc. No. 93 ¶ 14.) Defendant attached two (2) prior contracts as evidence of the forgery: (1) "Independent Contractor Agreement # 58" between Defendant and Brian Verdugo ("Verdugo"), then CEO of 1L Technologies, dated August 6, 2018; and (2) "Independent Contractor Agreement # 58" between Defendant and Verdugo, dated May 1, 2019. (Doc. No. 91, Ex. 1; Doc. No. 93, Ex. 1.) Again, these contracts are not "newly discovered evidence" under Federal Rules of Civil Procedure 60(b), 59(e) or 59(a)(2). Both contracts existed and were arguably within Defendant's possession at the time trial exhibits were due in August 2023. Marlyn Nutraceuticals, Inc., 571 F.3d at 880–81 (Rule 60(b) "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.").

Moreover, the Court finds no evidence of fraud justifying relief under Rule 60(b). Defendant's prior contracts with Plaintiff 1L Technologies in 2018 and 2019 do not reasonably put the validity of the July 1, 2019 contract into question. The Court's conclusion in its memorandum decision that the parties entered a valid contract is supported by the evidence admitted at trial. (Doc. No. 89 at 5.) Accordingly, the existence of the 2018 and 2019 contracts do not constitute manifest error of law or fact under Rule 59(a)(2) or 59(e) and do not require the Court to augment its August 30, 2023 judgment.

Defendant inconsistently references Plaintiffs throughout his filings. (Doc. Nos. 91, 93, 98.) For example, in Defendant's motions he only names Plaintiff Pixels Matter but does not name Plaintiffs 1L Technologies or Syncwise. (Doc. Nos. 91, 93.) In support of his motions, Defendant names Plaintiffs Pixels Matter and 1L Technologies, but not Plaintiff Syncwise. (Doc. No 98.) There is no disputing that Plaintiffs 1L Technologies and Syncwise are plaintiffs in this matter. (Doc. No. 24 ¶ 1.). The Court disregards Defendant's inconsistent naming of the Plaintiffs.

**C. Defendant's Work Performance**

Defendant makes several arguments that Plaintiffs "misled [the Court] that [his] work was done poorly." (Doc. No. 91 ¶ 3; Doc. No. 93 ¶ 3.) In sum, Defendant argues that (1) Pixels Matter paid him for his work; (2) Defendant needed more time than allotted to finish the work such that Pixels Matter's early evaluation of his partial work product was unfair; and (3) Pixels Matter's high expectations and demands set impossible tasks that Defendant could not complete as the sole engineer assigned to the task. (Doc. Nos. 91, 93.) Defendant's arguments are not "newly discovered evidence." He had ample opportunities to make these claims before the conflict in Ukraine broke out and prior to trial. Nevertheless, the Court considers Defendant's arguments and documents regarding his work performance.

Defendant attaches three payments that Pixels Matter made to him in June, July, and August 2019. (Doc. No. 91, Exs. 3–5; Doc. No. 93, Exs. 3–5.) He argues that Pixels Matter "agreed with the quality of work performed, otherwise [Pixels Matter] would not have paid" the invoices. (Doc. No. 91 ¶ 7; Doc. No. 93 ¶ 7.) In their opposition, Plaintiffs explain that Pixels Matter could not withhold payment based on Defendant's performance and was contractually bound to pay Defendant irrespective of whether Defendant produced useable work product. (Doc. No. 97 ¶ 20.) The contract states: Defendant "shall secure high quality and competence of the services rendered." (Doc. No. 80, Ex. 1 ¶ 5.) However, the contract does not give Pixels Matter the right to withhold payment from Defendant

13

based on work quality alone. (Id.) Accordingly, these payments do not support Defendant's argument that Pixels Matter was satisfied with his performance.

Defendant claims that Plaintiffs misrepresented the quality of his work with Pixels Matter to the Court. (Doc. Nos. 91, 93, 98.) Defendant notes that "there were . . . successful results and samples with good results," but Plaintiff "showed [the Court] only [Defendant's] failures. (Doc. No. 91 ¶ 7; Doc. No. 93 ¶ 7.) Defendant argues that he "completed the work as quickly and efficiently as possible." (Doc. No. 91 ¶ 3; Doc. No. 93 ¶ 3.) Defendant further asserts that Plaintiffs set unreasonable expectations and "gave impossible tasks" like assigning only Defendant to a task that "hundreds of people work on" in other organizations such as Tesla. (Doc. No. 91 ¶ 6; Doc. No. 93 ¶ 6.) As evidence of the long-term nature of the project and time needed to develop the work, Defendant attached a research and development plan from 2018. (Doc. No. 91, Ex. 2; Doc. No. 93, Ex. 2.) He claims that "it is impossible to evaluate [Defendant's] work until it is completed in full," which would have taken him at least another year or two. (Doc. No. 91 ¶ 4; Doc. No. 93 ¶ 4.)

At face value, Defendant's arguments regarding his performance and Pixels Matter's expectations are reasonable. Evaluation of work performance often leads to differing views, frequently with one party holding a higher opinion of the work performed than the other. However, ample evidence admitted at trial supports the Court's conclusion that Defendant breached the July 1, 2019 contract by failing to accomplish his assigned work tasks in an acceptable manner. The Court heard testimony that Defendant lacked the basic knowledge and skills necessary to execute the job. (Doc. No. 88, 13:24-14:7.) Defendant, notably, failed to produce any functioning work-product. (Id.) Due to Defendant's inability to produce any useful work product, Pixels Matter had to hire another engineer to redo all of Defendant's work. (Id., 74:12-17.) Additionally, Pixels Matter had to reassign another engineer to the project to make up for the time lost by Defendant. (Id., 75:4-8, 75:21-76:5.) The Court heard testimony that it took around a year for the two (2) engineers to redo Defendant's work and to dig out of the hole caused by Defendant's unproductivity.

(Id., 74:12-17, 75:4-8, 75:21-76:5.)  Additionally, Defendant's actions caused a significant delay in a project coming to market with a workable product which upset Plaintiffs' customers.  (Id., 74:18-23.)  In light of the well-established testimony and evidence admitted at trial, Defendant's claims regarding his performance and Pixels Matter's high expectations do not present manifest errors of law or fact justifying relief from the judgment.

Defendant also argues that Pixels Matter violated the July 2019 contract by terminating him without providing proper notice. (Doc. No. 91 ¶ 7; Doc. No. 93 ¶ 7.) ("The plaintiff did not notify me of the reason for terminating the contract, although his contract indicated that he needed to officially declare that the contract ended earlier than 1 month and hid every possible way what he would do with me.")  Defendant misstates the contractual provision.  The parties' contract provides: "[t]his Agreement may be terminated by either party before the Agreement expiration date but upon a fourteen (14) days' written notification of the other party."  (Doc. No. 80, Ex. 1 ¶ 8.1.)

Reviewing the evidence presented at trial, it appears that Plaintiffs did not provide Defendant with fourteen days' notice prior to his termination. (Doc. No. 88.)  However, even assuming Plaintiffs failed to provide Defendant proper notice, the Court concludes that Plaintiffs were justified in waiving notice to Defendant based on the evidence presented at trial.  Plaintiffs introduced evidence that Defendant refused to work with other Pixels Matter employees and became confrontational with his team members. (Id., 14:13-21.) Pixels Matter's apparent failure to provide Defendant with notice does not constitute a manifest error of law or fact, nor does it justify altering the judgment in any way or dismissing the complaint.

**D. Defendant's Access to Confidential Information**

Defendant claims that he "did not have any access to [Plaintiffs'] confidential information and was guided only by open sources on [Plaintiffs'] social media." (Doc. No. 91 ¶ 8; Doc. No. 93 ¶ 8). At trial, the Court heard credible testimony that Defendant removed intellectual property belonging to L1 Technologies and Syncwise from Pixels

15

Matter's computer servers and absconded with it. (Doc. No. 88, 15:2-8.) When Defendant worked at Pixels Matter, he had access to Pixels Matter's servers and access to confidential intellectual property for the project he was working on. (Id., 13:14-23.) Despite certain security measures in place, a motivated individual could access intellectual property that he is not privy to on Pixels Matter's servers. (Id., 57:12-25.) The Court heard testimony that not only did Defendant remove confidential information, but he has also said that he removed intellectual property belonging to L1 Technologies and Syncwise from Pixels Matter's servers. (Id., 15:2-8.)

Moreover, the Court received into evidence multiple exhibits where Defendant claimed to have Plaintiffs' intellectual property and was attempting to sell it at a reduced price. (Doc. No. 86, Exs. 2, 3, 4, 10.) For example, Plaintiffs' admitted evidence that Defendant, following his termination in October 2019, used Plaintiff's intellectual property to create a competing company, VeberFOC, Inc. (Doc. No. 86, Exs. 4, 5, 10.) VeberFOC's website was almost identical to L1 Technologies' website and offered the same products and technologies as Plaintiffs. (Doc. No. 88, 37:4-14, 37:16-38:24.) VeberFOC's social media accounts also displayed images of Plaintiffs' products, including one confidential prototype. (Doc. No. 86, Exs. 4, 10; Doc. No. 88, 26:11-27:17.) In short, the Court finds no manifest error of law or fact given the volume of credible evidence properly admitted at trial. Additionally, the Court finds no reason why Defendant could not have presented this argument prior to trial.

### E. Plaintiffs' Alleged Tax Evasion and Other Wrongdoings

In his motion to dismiss the complaint, Defendant alleges that Plaintiffs engaged in tax evasion. (Doc. No. 93.) In support, Defendant submits a letter from the State Tax Service of Ukraine, dated June 2, 2020.[7] (Id., Ex. 7.) Defendant further claims that "plaintiff did not go to [Ukrainian] court because he knew that the Security Service of

---

[7] In accordance with the Court's request, (Doc. No. 95), Plaintiffs submitted a certified translation of the letter in English. (Doc. No. 97, Ex. 2.)

Ukraine And Tax Police (Analog IRS in US) had come for him for forgery of documents." (Doc. No. 93 ¶ 9.) Plaintiffs deny Defendant's accusations of tax fraud. (Doc. No. 97 ¶¶ 15–17.) In pertinent part, the letter states: "[t]he information provided by [Defendant] has been analyzed, taken into consideration and taken into account in the work." (Id., Ex. 2 at 18.) Reviewing the letter, the Court does not find any evidence that the State Tax Service determined that Plaintiffs engaged in tax evasion, forgery, or any other wrongdoing. (Id.) The State Tax Service simply thanked Defendant for making a report of alleged illegal activity. (Id. at 19.) ("[T]he State Tax Service in the Kharkiv region thanks you for your active citizenship.").

Defendant misunderstands how corporate entities like Plaintiffs can legally change their corporate name and structure without running afoul of any U.S. or international tax laws. Defendant's confusion is evident by his allegation that "plaintiff obviously deceived [the Court] and transferred payments of invoices from company to company specifically for tax evasion." (Doc. No. 91 ¶ 3; Doc. No. 93 ¶ 3; see also Doc. No. 98 ¶ 7 ("plaintiff ceased to exist his company several times, so he obviously thought he had mixed up his tracks . . .").)

Neither the letter nor Plaintiffs' changes in corporate structure provides evidence of fraud or manifest error of law or fact to justify relief under Rules 60(b), 59(a)(2) or 59(e). Further, the letter was dated June 2, 2020, such that it could have been submitted by Defendant on numerous occasions, including before the conflict in the Ukraine started. As such, the letter cannot be "newly discovered evidence" under Rules 60(b), 59(a)(2), or 59(e). See e.g., S.E.C. v. Platforms Wireless Int'l Corp., 617 F.3d 1072, 1100 (9th Cir. 2010) (holding denial of defendant's motion for reconsideration under Rule 59(e) proper when defendant could have challenged plaintiff's arguments over a period of two (2) months).

Throughout his filings, Defendant calls Plaintiffs "fraudsters," (Doc. No. 91 ¶ 13; Doc. No. 93 ¶ 13), "extortionists," (Doc. No. 91 ¶ 8; Doc. No. 93 ¶ 8), and an "international criminal." (Doc. No. 98 ¶¶ 2, 6.) Defendant makes outlandish statements like claiming

that he "is [Plaintiffs'] slave." (Doc. No. 91 ¶ 3; Doc. No. 93 ¶ 3.) Additionally, Defendant frequently asserts that Plaintiffs lied to the Court under oath on numerous occasions. (Doc. Nos. 91, 93, 98.) The Court rejects these statements as puffed-up rhetoric with no basis in fact.

## CONCLUSION

The Court re-opens the record for the limited purpose of considering Defendant's arguments and the documents attached to Defendant's motions. (Doc. No. 91, Exs. 1–6; Doc. No. 93, Exs. 1–7). After analyzing each of Defendant's submissions, the Court denies Defendant's motions and declines to alter, amend, or vacate the judgment entered on August 30, 2023. (Doc. No. 90.) The Court will issue injunctive relief as permitted by law, taking into account the facts and circumstances of the matter following this Order.

**IT IS SO ORDERED.**

DATED: October 10, 2023

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT